DAVID W. SCOFIELD - 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah  84093-6160
Telephone:      (801) 322-2002
Facsimile:      (801) 912-0320
E-Mail:          dws@psplawyers.com

Gregory M. Nespole (Pro Hac Vice Application forthcoming)
Gloria Kui Melwani (Pro Hac Vice Application forthcoming)
**WOLF HALDENSTEIN**
    **ADLER FREEMAN &  HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone:      (212) 545-4600
Facsimile:      (212) 545-4653
E-Mails:        nespole@whafh.com
                melwani@whafh.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAN IPSON, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of QUESTAR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUESTAR CORPORATION, TERESA BECK, LAURENCE M. DOWNES, CHRISTOPHER A. HELMS, RONALD W. JIBSON, JAMES T. MCMANUS II, REBECCA RANICH, HARRIS H. SIMMONS, BRUCE A. WILLIAMSON, DOMINION RESOURCES, INC., and DIAMOND BEEHIVE CORP.<br><br>Defendants. | **COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY AND VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**(Proposed Class Action)**<br><br><br>Civil Action No. _____<br>Honorable _____<br><br><br>JURY DEMANDED |

Plaintiff  Don Ipson ("Plaintiff"), by his attorneys, brings the following Class Action Complaint ("Complaint") on its own behalf and on behalf all stockholders of Questar Corporation ("Questar" or the "Company"), other than Defendants (as defined below) and their affiliates, against Questar's board of directors (the "Board" or the "Individual Defendants") for breaching their respective fiduciary duties and/or aiding and abetting those breaches of fiduciary duty in connection with Dominion Resources, Inc.'s ("Dominion") offer to acquire all of the Company's outstanding shares of stock for $25 per share (the "Merger Consideration").  The allegations in this Complaint are based upon Plaintiff's personal knowledge as to itself, and upon information and belief and investigation of counsel as to all other allegations herein, as follows:

## I.      NATURE OF THE ACTION

1.      On February 1, 2016, Questar announced that it had entered into a definitive agreement (the "Merger Agreement") on January 31, 2016 with Dominion and Diamond Beehive Corp. ("Merger Sub") for Dominion to acquire Questar, for $25 for each share of Questar, valued at $47.00 per share (the "Proposed Transaction").  The implied equity value of the transaction is approximately $4.4 billion.  Both companies' boards of directors approved the Proposed Transaction. The Proposed Transaction contemplates an acquisition of all three of Questar's subsidiaries: Questar Gas Company ("Questar Gas"), Questar Pipeline Company ("Questar Pipeline"), and Wexpro Company ("Wexpro").

2.      The Proposed Transaction undervalues the Company at a time when the prices of the commodities markets and the energy sector are temporarily depressed. However, Questar, ranked as the number one energy company in the country for two years in a row, is poised for significant growth due to its position in the emerging natural gas market, therefore making it a prime target ripe for acquisition. In light of its potential, the Board failed to conduct any type of sales or auction process prior to entering into the Merger Agreement.

3.     Against this backdrop, Questar's Board agreed to the Proposed Transaction that significantly undervalues Questar, all the while injuring the Company's stockholders to the benefit of the Individual Defendants. The Merger Consideration represents a 22.6% over the closing price of Questar stock on the last trading day before the deal announcement. However, the Company's 52-week high is $26.29 per share.

4.     Compounding the unfairness of the Proposed Transaction, Defendants issued materially incomplete and misleading disclosures in the Schedule 14A Preliminary Proxy Statement (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") on March 11, 2016.  The Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction, in contraventions of sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 14a-9 promulgated thereunder regarding (i) the sales process leading to the Proposed Transaction; (ii) financial analyses performed by Goldman Sachs & Co. ("Goldman Sachs"); and (iii) the Company's and financial projections, which was relied upon Goldman Sachs in the financial analyses used to support its fairness opinion.

5.     The Proposed Transaction is also plagued with disabling conflicts of interests, as Questar's management team, including Questar's Chief Executive Officer ("CEO") Ronald Jibson ("Jibson"), will be staying on with the newly-formed company. The Individual Defendants will also receive significant severance and golden parachute payments in connection with the Proposed Transaction. Jibson will receive approximately $12 million upon the consummation of the merger.

6.     In pursing the unlawful plan to sell the Company via an unfair process and at an inadequate price, each of the defendants has violated applicable law by directly breaching and/or aiding and abetting the other defendants' breaches of their fiduciary duties of loyalty and due care, among others. This action seeks to enjoin the Individual Defendants from further violating federal

securities laws and breaching their duties in connection with the Proposed Transaction. Specifically, to remedy the defendants' legal violations as set forth herein, Plaintiff seeks, among other things: (i) an order requiring defendants to disclose the omitted and/or misrepresented material information concerning the value of the Merger Consideration; (ii) injunctive relief preventing consummation of the Proposed Transaction unless and until the Company adopts and implements a procedure or process designed to obtain a transaction that provides the best possible terms for shareholders; (iii) a directive to the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of Questar's shareholders; and (iv) rescission of, to the extent already implemented, the Merger Agreement or any of the terms thereof.

## II.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this action pursuant to section 27 of the Exchange Act for violations of sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. This Court has supplemental jurisdiction under 28 U.S.C. § 1367, over the state law claims.

7.    This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because (i) Questar maintains its principal place of business in this District; (ii) one of more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iv) defendants have

received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

### III. THE PARTIES

9.      Plaintiff is, and at all times relevant hereto was, a holder of shares of Questar common stock.  Plaintiff held shares of Questar stock at the time of the commencement of this action.

10.     Defendant Questar is a Utah corporation that maintains its principal place of business at 333 South State Street, Salt Lake City, Utah, 84145.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "STR."  Questar is a natural gas company that develops, produces, and delivers clean energy with three major lines of business: retail gas distribution, interstate gas transportation, and gas production.

11.     Defendant Teresa Beck ("Beck") has served on the Board since 1999 and is a member of the Finance and Audit Committee and the Governance and Nominating Committee.

12.     Defendant Laurence M. Downes ("Downes") has served on the Board since 2010 and is a member of the Finance and Audit Committee and the Management Performance Committee.

13.     Defendant Jibson has served on the Board since 2010 and is the President and CEO of Questar and its subsidiary Wexpro, and is Chairman and CEO of the other two Questar subsidiaries Questar Pipeline and Questar Gas.

14.     Defendant James T. McManus II ("McManus") has served on the Board since 2015 and is a member of the Finance and Audit Committee and the Governance and Nominating Committee.

15.    Defendant Rebecca Ranich ("Ranich") has served on the Board since 2014 and is the Chairof the Governance and Nominating Committee and a member of the Management Performance Committee.

16.    Defendant Harris H. Simmons ("Simmons") has served on the Board since 1991 and is the Lead Director of the Board, as well as a member of the Finance and Audit Committee and the Governance and Nominating Committee.

17.    Defendant Bruce A. Williamson ("Williamson") has served on the Board since 2006 and is a member of the Finance and Audit Committee and the Management Performance Committee.

18.    The defendants identified in paragraphs 9 through 15 are collectively referred to herein as the "Individual Defendants" or the "Board."  By virtue of their corporate directorships, the Individual Defendants are fiduciaries of Plaintiff and the other Company stockholders.

19.    Each Individual Defendant herein is sued individually as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that each has engaged in all or part of the unlawful acts, plans, schemes, or transactions of which Plaintiff complains of herein.

20.    Defendant Dominion is a Virginia corporation with its corporate headquarters located at 120 Tredegar Street, Richmond, Virginia 23219.  Dominion is listed on the New York Stock Exchange and trades under the symbol "D."  Dominion is a power and energy company that supplies natural gas to the eastern part of the United States.

21.    Dominion formed defendant Merger Sub, a Utah corporation, for purposes of consummating the Proposed Transaction.

22.    Collectively, Dominion, Merger Sub and the Individual Defendants are referred to herein as "Defendants."

## IV.   CLASS ACTION ALLEGATIONS

23.   Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23 on Plaintiff's own behalf and as a class action on behalf of all other public stockholders of Questar (except Defendants herein, and any persons, firm, trust, corporation or other entity related to or affiliated with them and their successors in interest), who are or will be threatened with injury arising from Defendants' wrongful actions, as more fully described herein (the "Class").

24.   This action is properly maintainable as a class action for the following reasons:

a.   The Class is so numerous that joinder of all members is impracticable. According to the Company's Form 10-K filed February 18, 2016 with the United States Securities and Exchange Commission, there are 175,008,184 shares outstanding as of January 31, 2016. There are likely thousands of beneficial holders of Questar common stock scattered throughout the world.

b.   There are questions of law and fact which are common to the Class including, among other things:

i.   Whether the Defendants engaged in a proper process that maximized shareholder return;

ii.   Whether the Defendants breached their fiduciary duties of loyalty and/or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

iii.   Whether the Defendants unjustly enriched themselves and other insiders or affiliates in connection with the Proposed Transaction;

iv.   Whether the Proxy contains material misstatements or omissions in violation of sections 14(a) and 20(a) of the Exchange Act.

v.      Whether the Defendants breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duty of good faith;

vi.      Whether Dominion, and Merger Sub aided and abetted the breaches of fiduciary duties alleged by Plaintiff against the Individual Defendants; and

vii.      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

c.      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

d.      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

e.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## V.    THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

25.      By reason of the Individual Defendants' positions with the Company as officers, and/or directors, each Defendant is in a fiduciary relationship with Questar's stockholders and

owes them a duty of highest good faith, loyalty, and due care under Delaware law, and were and are required to: (a) act in furtherance of the best interests of Questar's public stockholders; (b) refrain from abusing their positions of control; and (c) candidly and fully disclose all material information concerning the Proposed Transaction.

26.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's stockholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control (particularly when it involves a decision to eliminate the stockholders' equity investment in a company), applicable law requires the directors to take all steps to adequately inform themselves and ensure that the transaction provides stockholders with fair value, rather than use a change of control to benefit themselves, and to disclose all material information concerning the Proposed Transaction to enable the stockholders to make an informed decision regarding such a transaction.

27.     To diligently comply with this duty, the directors of a corporation may not take any action that: adversely affects the value provided to the corporation's stockholders; contractually prohibits them from complying with or carrying out their fiduciary duties; discourages or inhibits alternative offers to purchase control of the corporation or its assets; or will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholder.

28.     In addition, Defendants have the responsibility to act independently so that the interests of the Company's public stockholders will be protected and to consider properly all *bona fide* offers for the Company and to reject offers that are clearly not in the interest of stockholders.

29.     Further, the Individual Defendants, as directors of Questar, must adequately ensure that no conflict of interest exists between Defendants' own interests and their fiduciary

obligations to the Company or, if such conflicts exist, to ensure that all such conflicts will be resolved in the best interests of the Company's stockholders.

30.     The Individual Defendants have breached their fiduciary duties owed to Questar and its public stockholders in that they have not, and are not, exercising independent business judgment and have acted, and are acting, to the detriment of Questar's public stockholders.

## VI.     SUBSTANTIVE ALLEGATIONS

### Background of the Companies

31.     According to its annual report, Questar, by itself and through its wholly-owned subsidiaries, is a natural-gas focused energy company that distributes, transports, and produces gas in the United States, serving 990,381 sales and transportation customers in the western part of the country.

32.     Questar Gas is a retail gas distribution and public natural gas utility providing gas-distribution service to nearly 900,000 customers. Questar Pipeline, operating on 2,670 miles of interstate pipeline, transports and stores natural gas. Wexpro develops and produces gas and oil for Questar Gas.

33.     Questar Gas owns approximately 93% of the residential market share in its distribution area, and does not compete with any other company. It can afford to offer competitive rates for its customers because the natural gas it supplies comes directly from Wexpro.

34.     Questar Pipeline's transportation system is strategically located near large reserves of natural gas in the Rocky Mountains. Questar Pipeline also owns and operates the Clay Basin storage facility – the largest underground storage facility for natural gas in the region.

35.     Wexpro develops, produces, and maintains gas reserves throughout the Rocky Mountain region. It is in contract with Questar to provide natural gas for Questar Gas customers

at a stipulated, defined cost of service, not at market rates. Pursuant to this arrangement, Wexpro's gas supply has saved Questar Gas customers approximately $1.2 billion.

36.     Dominion was founded in 1983 in Virginia and is one of the country's largest producers and transporters of energy. Dominion primarily serves the eastern part of the United States, approximately 5 million energy customers.

**Questar's Strong Performance and Is Poised For Further Growth**

37.     In 2015, Questar was ranked as the best company in the western region by J.D. Power in its annual Gas Utility Business Customer Satisfaction Study. In addition, *Public Utilities Fornightly*, the leading publication for information regarding the utility industries, named the Company as the number one energy company in the United States for the second year in a row, based on Questar's four-year averages in profit margin, dividend yield, free cash flow, return on equity, return on assets, and sustained growth.

38.     On April 29, 2015, Questar issued a press release reporting results for the fiscal first quarter of 2015, announcing that Questar Gas had experienced a net income rise of 11% to $43.8 million in the quarter. The press release also stated that Questar Gas completed the acquisition of Eagle Mountain City's gas-distribution system, adding over 6,500 new customer, amounting to nearly 23,000 net new customers over the past 12 months.  The Company again announced in the third quarter of 2015 that Questar Gas grew its total customer base to 981,348 customers, a gain of 2.8% compared to the same period in 2014.

39.     On February 1, 2016, Jim Collins published an article in *Forbes* observing that Dominion bought the Company on the cheap for acquiring an undervalued and profitable asset, noting that Dominion is gaining 2,670 miles of pipeline, 1 million retail customers, and an exploration and production crown jewel, Wexpro.

40.     *Motley Fool* echoed the *Forbe*'s sentiment, stating that "Dominion will inherit Questar's $1.1 billion annual revenue stream and $220 million in annual income. Altogether, therefore, Dominion is paying an enterprise value of about 5.4 times sales for Questar, and about 27.3 times earnings."

41.     As described herein, the Proposed Transaction, which was unanimously approved by the Company's Board, is the product of a flawed process that is designed to ensure the sale of Questar to Dominion on terms preferential to Dominion, but detrimental to Plaintiff and the other public stockholders of Questar.

42.     The consideration offered to Questar stockholders is unfair and grossly inadequate because it does not reflect the intrinsic value of the Company's common stock.

43.     Consequently, if the Proposed Transaction closes, Questar stockholders, such as Plaintiff, will be denied the growth opportunity the Company has been touting.  As described further herein, the offer price fails to adequately value the Company or compensate the Company's stockholders.

***The Flawed Sales Process***

44.     The Proposed Transaction is the product of a flawed sales process steered by the conflicted CEO, who sought to sell the Company for a personal financial windfall.

45.     Jibson failed to conduct any sort of bidding process for the Company, and the Board has thus failed to inform itself of the true value of the Company before hastily entering into the Merger Agreement for inadequate consideration. Neither Jibson nor the Board solicited any third party interest during the process and never instructed its financial advisor, Goldman Sachs to conduct a search for buyers. Indeed, Goldman Sachs itself is conflicted, as the bank served as a joint book running manager for Dominion's affiliate's $368 million initial public offering in 2014.

46.   In the face of a single-bidder process, the Board's decision to agree to a strict no-solicitation clause is unjustified. In addition, the Board failed to form a special committee to oversee the sales process to maximize stockholder value. Instead, the Board allowed Jibson to run and control the negotiations with Dominion and drive the process for his own financial benefit, to the detriment of Questar stockholders.

**The Proposed Transaction Is Announced**

47.   On February 1, 2016, the Company and Dominion jointly announced the Proposed Transaction. The press release stated, in relevant part:

> RICHMOND, Va. - Dominion Resources, Inc. (NYSE: D) and Questar Corporation (NYSE: STR) today announced an agreement for the companies to combine, in an all-cash transaction in which Dominion has agreed to pay Questar shareholders $25 per share - about $4.4 billion - and assume Questar's outstanding debt.
>
> The transaction would be accretive to Dominion upon closing - expected by year-end 2016 - with limited impact on the company's balance sheet. Dominion intends to finance the transaction in a manner that supports the company's existing credit ratings targets, using equity, mandatory convertibles and debt at Dominion, and equity at Dominion Midstream Partners, LP (NYSE: DM). The Dominion-Questar combination also is expected to support Dominion's 2017 earnings growth rate and allow the company to reach the top of or exceed its 2018 growth targets.
>
> Questar, headquartered in Salt Lake City, Utah, is a natural gas distribution, pipeline, storage and cost-of-service gas supply company. It serves nearly 1 million homes and businesses in Utah, Wyoming and Idaho, with approximately 97 percent of those customer accounts in Utah. Questar employs about 1,700 people and has about $4.2 billion in assets, including approximately 27,500 miles of gas distribution pipeline, 3,400 miles of gas transmission pipeline and 56 billion cubic feet of working gas storage. Its regional cost-of-service gas supply business has provided reliable supply and saved Questar Gas customers more than $1 billion over the past 35 years under a public service commission-approved framework.

\* \* \*

48.   The Proposed Transaction fails to achieve the per-share valuation anticipated by activist investors and analysts. Instead, the Board rushed into the arms of a strategic partner.

Therefore, the Individual Defendants were incentivized to drive a sales process that primarily served their own interests and was detrimental to Questar stockholders.

49.     The Board acquiesced to the sale of the Company at a material discount to its true value.  Stockholders are being short-changed by the Board because the Board members have capped the possible return for stockholders in favor of their own personal benefit.

***The Unreasonable Deal Protection Devices***

50.     Additionally, the terms of the Merger Agreement are calculated to unreasonably dissuade other potential bidders from making competing offers.

51.     For example, the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "No Solicitation" provision in Section 5.3(a) of the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

52.     Further, pursuant to Section 5.3(b) of the Merger Agreement, the Company must advise Dominion, within twenty-four hours, of any proposals or inquiries received from other parties, including, *inter alia*, the material terms and conditions of the proposal.

53.     Moreover, Section 5.3(d) of the Merger Agreement grants Dominion a "matching right" with respect to any "Superior Proposal" made to the Company, with four business days to match any competing proposal in the event that one is made.

54.     Further locking up control of the Company in favor of Dominion is Section 7.3 of the Merger Agreement, which contains a provision for a "Termination Fee" of $99 million, payable by the Company to Dominion if the Individual Defendants cause the Company to terminate the Merger Agreement pursuant to the lawful exercise of their fiduciary duties, unreasonably deterring any competing proposals to acquire the Company.

55. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

**Defendants' Interests in the Proposed Transaction**

56. As reflected in the Proxy, certain of the Company's directors and officers stand to receive substantial benefits as a result of the Proposed Transaction.

57. For example, as a result of the Proposed Transaction, each Questar option that is outstanding will fully vest and be converted into the right to receive the per share merger consideration in respect of each net share underlying the Questar option, after taking into account the option exercise price. Further, each award of restricted shares of Questar common stock that is outstanding will fully vest and be converted into the right to receive the per share merger consideration in respect of each share of Questar common stock subject to such award of restricted shares.

58. The Board and the Company's executive officers will be entitled to nearly $76 million, approximately $12 million of which is payable to Jibson.

59. Accordingly, the Company's directors and officers stand to receive significant benefits and thus have reason to support the Proposed Transaction, which is otherwise against the best interests of the Company's stockholders.

**The Materially Misleading Proxy**

60. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction. As discussed below and elsewhere herein, the Proxy omits material information that must be disclosed to Questar's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

61.     The Proxy omits material information with respect to the Company's financial projections, the valuation analyses performed by Goldman Sachs, and the process and events leading up to the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Questar's stockholders.

The Company's Financial Projections

62.     With respect to the Company's financial projections, the Proxy fails to disclose Questar's financial projections for each of its business segments: Questar Pipeline, Wexpro, and Questar Gas.

63.     The full disclosure of Questar's financial projections is necessary because stockholders, who are being cashed out, are being deprived of the ability to understand the Company's future cash flows, which are of critical importance when deciding to accept cash now or continue the Company on a standalone basis.

Goldman Sachs's Valuation Analyses

64.     With respect to Goldman Sachs's Sum-Of-Parts Analysis, the Proxy fails to disclose the following: (a) criteria used for selecting the companies used; (b) individual multiples used; and (c) basis for selecting the valuation metrics used for each segment.  Further, the Proxy fails to disclose whether Goldman Sachs performed any type of benchmarking analysis for Questar in relation the selected companies.

65.     With respect to J.P. Morgan's Selected Transaction Analysis, the Proxy fails to disclose the individual multiples for each of the selected transactions observed by Goldman Sachs. Further, the Proxy fails to disclose whether J.P. Morgan performed any type of benchmarking analysis for Questar in relation the selected transactions.

66.     The disclosure of the observed multiples and benchmarking analyses in J.P. Morgan's market-based analyses are necessary because these analyses are fundamentally based on

comparison and relative valuation. The multiples, moreover, formed the basis of Goldman Sachs's analyses and the Board's determination that the merger consideration was fair, and, therefore, this information is material to stockholders in determining whether to vote in favor of the Proposed Transaction.

The Background Leading up to the Proposed Transaction

67.     The Proxy fails to disclose information surrounding the offers of post-merger employment with the combined company following the completion of the Proposed Transaction. The full disclosure of potential conflicts of interest of management that helped negotiate the terms of the merger is material to stockholders.

68.     The Proxy does not inform stockholders of how Goldman Sachs was chosen as Questar's financial advisor for the purposes of the Proposed Transaction and whether the Board knew about the conflicts with Goldman Sachs before the letter given to the Company on January 30, 2016, the day before the Merger Agreement was executed.

69.     The Proxy is also devoid of reasons why the Board did not negotiate for a price higher than $25.

70.     The Proxy fails to disclose the reasons the Board determined not to pursue a transaction with each of Parties A through D.

## COUNT I

**Against the Individual Defendants and Questar for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

71.     Plaintiff repeats and re-alleges each allegation set forth herein.

72.     The Individual Defendants and the Company disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants and Questar. The Proxy misrepresented and/or omitted material facts, including material information about the actual value of the Company.

74.     In so doing, the Individual Defendants and Questar made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

75.     The Individual Defendants and Questar were at least negligent in filing the Proxy with these materially false and misleading statements.

76.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

77.     By reason of the foregoing, the Individual Defendants and the Company have violated section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

78.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

79.     Plaintiff repeats and re-alleges each allegation set forth herein.

80.     The Individual Defendants acted as controlling persons of Questar within the meaning of section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Questar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

81.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, each is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

83.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions of which had input from the Individual Defendants. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

84.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to section 20(a) of the Exchange Act.

## COUNT III

### Claim for Breach of Fiduciary Duties Against Individual Defendants

85.     Plaintiff repeats and re-alleges each allegation set forth herein.

86.     Defendants have violated fiduciary duties of care, loyalty, and good faith owed to public stockholders of Questar and have acted to put their personal interests ahead of the interests of Questar's stockholders.

87.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Questar.

88.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Questar by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Questar to its public stockholders.

89.     The Individual Defendants dominate and control the business and corporate affairs of Questar, and are in possession of private corporate information concerning Questar's assets, business, and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Questar which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

90.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

91.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of

Questar's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

92.      Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

93.      Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## COUNT IV

### Claim for Aiding and Abetting the
### Individual Defendants' Breach of Fiduciary Duty
### Against Dominion, and Merger Sub

94.      Plaintiff repeats and re-alleges each allegation set forth herein.

95.      Dominion, and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Questar's public stockholders, and have participated in such breaches of fiduciary duties.

96.      Dominion, and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Dominion, and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

97.      Dominion, and Merger Sub have participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.  Dominion, and Merger Sub obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches.  Dominion and Merger Sub will benefit from

the acquisition of the Company at an inadequate and unfair price if the Proposed Transaction is consummated.

98.     As a result of this conduct by Dominion, and Merger Sub, Plaintiff and the other members of the Class have and will be damaged by being denied the opportunity to increase the value of their investments in Questar.

99.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff demands judgment as follows:

A.     Declaring this action to be a proper Class action and certifying Plaintiff as Class representative and Plaintiff's counsel as Class Counsel;

B.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.     Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for stockholders;

D.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissionary damages;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Questar and obtain a transaction which is in the best interests of Questar stockholders;

F.      Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

G.      Awarding reasonable fees, expenses, and costs to Plaintiff and Plaintiff's counsel; and

H.      Granting such other and further relief as the Court deems just and proper.

Dated this 30th day of March, 2016.

PETERS | SCOFIELD
*A Professional Corporation*


/s/ David W. Scofield
David W. Scofield

-and-

**WOLF HALDENSTEIN
   ADLER FREEMAN &  HERZ LLP**
Gregory M. Nespole
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016

*Attorneys for Plaintiff*

## CERTIFICATION

I, Dan Ipson ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.  Plaintiff has reviewed the complaint and authorizes its filing.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.  Plaintiff's purchase and sale transaction(s) in the **Questar Corporation (NYSE: STR)** security that is the subject of this action during the Class Period is/are as follows:

### PURCHASERS

| Buy Date | Shares | Price per Share |
|----------|--------|-----------------|
| 2-14-2016 | 36 | 41.03 |
| 10-15-2008 | 390 | 24.845 |
|  |  |  |
|  |  |  |
|  |  |  |

### SALES

| Sell Date | Shares | Price per Share |
|-----------|--------|-----------------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

12052· Shares OWNED TODAY

5.  Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.  During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below NONE .

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this **30** day of **March**, 2016.

Dan Ipson